IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Joy Lynn Smith, | ) | Civil Action No. 8:14-cv-02547-JDA |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge [Doc. 10]; and the Order of reference signed by the Honorable R. Bryan Harwell on July 30, 2014 [Doc. 11]. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner affirmed.

## PROCEDURAL HISTORY

In March 2011, Plaintiff filed an application for DIB alleging disability beginning February 7, 2011. [R. 129–130.] Plaintiff's DIB claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 92–99.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on November 29, 2012, ALJ Gregory M. Wilson conducted a de novo hearing on Plaintiff's claim. [R. 55–91.] The ALJ issued a decision on April 12, 2013, finding Plaintiff was not disabled under the Act. [R. 12–54.]

At Step 1,[1] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") from January 1, 2006 through December 31, 2015, and had not engaged in substantial gainful activity since February 7, 2011, her alleged onset date. [R. 14, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: lumbar facet joint dysfunction; spondylosis with mechanical low back pain and sacroiliac joint complex pain; hypertension; anxiety with panic attacks; and depression. [R. 14, Finding 3.] The ALJ also found Plaintiff had the following non-severe impairments: right knee deficit; peripheral arterial disease; shoulder and thumb pain; and respiratory impairment. [R. 14–19.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 21, Finding 4.] The ALJ specifically considered Listings 1.04, 12.04, and 12.06. [R. 21–25.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that because of her back pain, she can never climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl. Despite her neck pain, she can frequently reach overhead. Because of her narcotic medications, she, and must avoid concentrated exposure to hazards (e.g., machinery, heights, etc.). Because of her mental impairments, she is limited to unskilled work (one to two step tasks).

---

[1]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 25, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff could not perform her past relevant work as a as a plant manager, a cutting department textile cutter, or a buy/scheduler.  [R. 47–48, Finding 6.]  However, based on her age, education, work experience, RFC, and the testimony of a vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform [R. 48, Finding 10].  On this basis, the ALJ found Plaintiff was not under a disability, as defined in the Act, at any time from February 7, 2011, through the date of the decision.  [R. 49, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Appeals Council declined review.  [R. 1–6. ]  Plaintiff filed this action for judicial review on June 24, 2014.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred by failing to properly consider and apply the requirements of SSR 96-7p in assessing Plaintiff's complaints of pain and by failing to properly evaluate the opinions of Plaintiff's treating physicians under the various factors set forth in 20 CFR §§ 404.1527(D) and 494.927(D).  [Doc. 15 at 4–21.]

The Commissioner, on the other hand, contends substantial evidence supports the ALJ's credibility finding and evaluation of the medical opinion evidence.  [Doc. 16 at 16–24.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to

3

support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,*

4

611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176,

1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

6

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[2]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact.  *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[2]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

I.    **The Five Step Evaluation**

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).   If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.   *Id.* §§ 404.1574–.1575.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.   *See id.* § 404.1521.   When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.   42 U.S.C. § 423(d)(2)(B).   The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.   *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").   Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.   *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").   If the ALJ finds a combination of

impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[3] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner

---

[3]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

10

may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and

---

[4]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the

opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter

14

of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects

15

> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence. If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability. Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the functional
> effects of pain such as deteriorating nerve or muscle tissue,
> muscle spasm, or sensory or motor disruption), if available,
> should be obtained and considered. Because pain is not readily
> susceptible of objective proof, however, the absence of
> objective medical evidence of the intensity, severity, degree or
> functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.   Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to

the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although

credibility determinations are generally left to the ALJ's discretion, such determinations

should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010

("We recognize that the administrative law judge has the unique advantage of having heard

the testimony firsthand, and ordinarily we may not disturb credibility findings that are based

16

on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Analysis under SSR 96-7p

Plaintiff challenges the ALJ's credibility analysis, arguing that the ALJ referenced SSR 95-5p although it has been superceded by SSR 96-7p. [Doc. 15 at 4.] Plaintiff further alleges that the ALJ "failed to develop the record through the plaintiff's hearing testimony in order to reconcile the issues he uses in his Order to question her credibility." [*Id.*] Finally, Plaintiff challenges the ALJ's finding that there is no evidence of "any frequent, radicular, severely intense pain of such a disabling nature" and outlines the evidence she alleges supports a finding of such pain in a 4-column, 48-row table summarizing evidence in the record. [*Id.* at 5–15.] The Commissioner contends the ALJ fully complied with the requirements of SSR 96-7p and explained at great length and detail why he found Plaintiff's subjective complaints of disabling pain less than fully credible. [Doc. 16 at 17.] Moreover, the Commissioner points out that throughout the opinion, the ALJ explains in detail how Plaintiff's allegations simply do not match her objective medical records. [*Id.* at 18.] Lastly, the Commissioner points out that the chart utilized by Plaintiff in her brief heavily cites to Dr. Worsham's records, which are merely memorializations of Plaintiff's subjective complaints. [*Id.* at 19.]

SSR 96-7p was published in July 1996 when the regulations were amended to clarify when the evaluation of symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other

17

symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision.[5]     SSR 96-7p provides, "[i]f an individual's statements about pain or other symptoms are not substantiated by the objective medical

---

[5]SSR 96-7p superceded SSR 95-5p, which was directed to the consideration of pain and other symptoms in assessing a claimant's RFC.  The purpose of SSR 95-5p was

> [t]o restate and clarify that the longstanding policies of the Social Security Administration (SSA) of considering allegations of pain in assessing residual functional capacity (RFC), and of requiring explanations of the conclusions reached about pain, apply to the evaluation of all symptoms, not just pain; that they apply to the preparation of the individualized functional assessment (IFA) in the evaluation of disability for individuals under age 18 claiming benefits under title XVI of the Social Security Act (the Act) as well as to the assessment of RFC for other persons claiming benefits based on disability under title II or title XVI of the Act; and that an explanation of the functional impact of symptoms, such as pain, when applicable, is required.

SSR 95-5p, 60 Fed. Reg. 55,406-01 (Oct. 31, 1995).  SSR 95-5p also provided that

> in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.  The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work or, in the case of an individual under age 18 claiming benefits based on disability under title XVI, the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner.

*Id.* at 55,407.

18

evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." 61 Fed. Reg. at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)-(c)(2), 416.929(c)(1)-(c)(2) (outlining evaluation of pain). As stated in SSR 96-7p, the provisions of 20 C.F.R. §§ 404.1529(c) and 416.929(c) set forth the following factors that the ALJ must consider in addition to the objective evidence when assessing a claimant's credibility:

1.    The individual's daily activities;
2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.    Factors that precipitate or aggravate the symptoms;
4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and
7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Additionally, the adjudicator must consider "the entire case record." SSR 96-7p, 61 Fed. Reg. at 34,484.

### The ALJ's Credibility Determination

In evaluating Plaintiff's complaints of pain, the ALJ concluded that Plaintiff's pain did not cause her to be unable to perform a wide range of sustained light exertional work. [R. 25.] The ALJ explained that he "considered the interrelation of objective medical and physiological findings and the diagnoses of various examining physicians, as well as the claimant's own subjective complaints of discomfort" and found Plaintiffs subjective complaints regarding discomfort were not credible. [*Id.*] The ALJ indicated that after considering Plaintiff's subjective complaints "in view of pertinent Fourth Circuit case law and

19

Social Security Ruling 95-5p, [he did] not find any medical condition which could reasonably be expected to cause [Plaintiff] 'disabling' pain." [R. 26.]  The ALJ further indicated that, in assessing the credibility of Plaintiff's claim for disability he "followed the mandate of the Fourth Circuit in Craig v. Chater, 76 F.3d 585 (1996) and SSR 96-7p." [Id.]  The ALJ also stated that he "considered [Plaintiff's] testimony but [found] it less than fully credible, because it [was] inconsistent with her prior statements documented in the medical record, the medical evidence in the record, and with her allegations of limitations." [Id.]

The ALJ's explained his analysis of Plaintiff's pain complaints as follows:

> I specifically find that the claimant's subjective complaints regarding discomfort are not credible in establishing pain of a "disabling" nature as the record simply does not reveal any frequent, radicular, severely intense pain of such a disabling nature.  Nor does the record indicate that the performance of sustained light exertional work activities would either precipitate or aggravate pain to a "disabling" degree.  The claimant reported she currently takes Neurontin, Ultram, Zanaflex, Roxicodone, Zantac, and Norco for pain (Ex. 13E).  There is no evidence that these medications have been less than effective in at least partially alleviating the claimant's pain.  In her *Function Report-Adult* dated April 29, 2011, the claimant said she uses a heating pad for pain, but it was not prescribed by a doctor (Ex.4E/7).  She testified that she uses a treatment of alternating heat and ice 40 minutes daily.  The claimant has otherwise alleged no non-medicative treatment for pain relief.  The medicative and treatment history of record does not persuade me that the claimant is unable to engage in light exertional activity because of pain.
>
> In terms of functional restriction and activities of daily living, the claimant testified that despite her pain, she can manage her personal care, gets her son up and ready for school, feeds him, and then cleans the living room, cleans the kitchen some, attempts to clean the bathroom.  She washes dishes, sometimes does laundry but seldom folds clothes.  She cooks very seldom, but more often goes out to eat.  She drives short distances (2 to 3 miles) to shop at Wal-mart.  Because of pain, in between her housework she has to lay down for 20 to 30

20

> minute rest breaks four to five times a day. Notably, she also testified that in June 2012 she went to Myrtle Beach on vacation.

[R. 25–26.] The ALJ evaluated the medical evidence of record related to Plaintiff's spondylosis [R. 26–33], cervical degenerative disc disease [R. 34], hypertension [R. 34–35], and depression and anxiety [R. 35–41]; addressed inconsistencies in the record that spoke to Plaintiff's credibility [R. 41–42]; and evaluated the opinion evidence of record [R. 42–47] in reaching his conclusion regarding Plaintiff's RFC, finding her capable of a limited range of light work due to her back pain, neck pain, narcotic medications, and mental impairments [R. 25].

### *Discussion*

Upon review, the Court finds the ALJ discharged his duty to address Plaintiff's subjective testimony by describing medical and non-medical evidence he considered in discounting some of her testimony. The ALJ considered Plaintiff's testimony regarding her daily activities as required by SSR 96-7p, noting that on April 29, 2011, a little over two months after her alleged onset date, Plaintiff completed a Function Report-Adult indicating that she got her son ready for school, took him to school and picked him up, cooked supper, cleaned the kitchen, gave her son a bath and got him ready for bed, and tried to clean the house over several hours with breaks to rest. [R. 44, 157.] She also reported preparing meals daily, typically easy items that took 15 to 30 minutes; driving a car; going out alone; shopping for groceries; paying bills; counting change; handling a savings account and check book; going to church only once a week due to pain from sitting; and watching TV. [R. 44, 158–160.]

21

With respect to the location, duration, frequency, and intensity of Plaintiff's pain and symptoms, the ALJ considered Plaintiff's complaints of limitations with respect to her low back pain and concluded that while medical records documented reports of intermittent back pain beginning in November 2007, the medical evidence of record showed only "minimal" degenerative disk disease, spondylosis with mechanical low back pain, and sacroiliac joint complex pain.  [R. 26–27.]  The ALJ also noted that "x-rays of the lumbar spine on May 1, 2012—obtained by Dr. Worsham—showed only 'changes of extremely minimal degenerative disk disease and spondylosis at L2-3 and L3-4.  Otherwise, unremarkable study.'"  [R. 33.] With respect to Plaintiff's neck pain, the ALJ noted that in January 2011, Dr. Worsham treated Plaintiff's neck pain with narcotics and Valium but did not refer her to physical therapy, a neurosurgeon, an orthopedist, or a rheumatologist for evaluation and treatment, nor back to pain management.  [R. 34.]

The ALJ considered Plaintiff's claims of factors precipitating or aggravating her pain such as walking more than 20 feet, standing more than 10 to 15 minutes, sitting more than 15 minutes, walking down stairs, squatting, bending, and lifting more than 10 pounds.  [R. 27.]  The ALJ noted, however, that Plaintiff's work history report dated April 7, 2011 indicated she worked as a plant manager, working 10 hours a day, five days a week; she stood nine hours a day, and every day carried rolls of material weighing 50 pounds or more to the cutting floor, which was anywhere from 10 to 50 feet away; she had to lift up to 70 pounds; she stooped four to six hours a day, climbed one hour, crouched two hours; she handled/grabbed or grasped big objects four hours a day and reached five hours a day; and she spent three hours a day supervising 23 to 60 people.  [R. 27.]  According to her self

22

report, and despite her alleged back pain, the ALJ noted Plaintiff was performing medium to heavy exertional work through her alleged onset date.  [*Id.*]

The ALJ considered Plaintiff's type, dosage, effectiveness, and side effects of medication as well.  The ALJ noted that Plaintiff reported she took Neurontin, Ultram, Zanaflex, Roxicodone, Zantac, and Norco for pain, but that there was no evidence that these medications had been less than effective in at least partially alleviating Plaintiff's pain.  [R. 26.]  Treatment other than medication considered by the ALJ included Plaintiff's alternating heat and ice 40 minutes daily but she otherwise alleged no non-medicative treatment for pain relief.  [R. 26.]  Other measures Plaintiff had used to alleviate pain included lying down for 20 to 30 minutes for rest breaks between housework chores, four to five times a day. [R. 26.]  The ALJ concluded that, because of her narcotic medications, she must avoid concentrated exposure to hazards.  [R. 25.]

Other factors considered by the ALJ in evaluating Plaintiff's credibility included inconsistencies in the record which the ALJ labeled "troubling aspects to this case."  [R. 41.] For instance, the ALJ noted the following:

- Although Plaintiff testified that she stopped work on February 7, 2011 when her doctor put her out of work for pain, her earnings record showed she earned more in the first quarter of 2011 ($9,363) than she had in the third ($8,711) or fourth ($7,708) quarters of 2010.

- Plaintiff testified that she has never applied for Unemployment Benefits, but the record showed that she drew Unemployment Benefits in the third ($978) and fourth ($652) quarters of 2010 even though her earnings record indicated she worked in both of these quarters.

- Dr. Marshall told her she had very mild peripheral arterial disease in the left ankle, and specifically said it was not severe, but she told Dr. Worsham he said she had peripheral arterial disease, worse on the left than on the right. There was no evidence it existed on the right at all.

23

- While it shows she was in a single vehicle auto accident on November 23, 2010, per her report it was caused because she took Lortab and Soma and fell asleep while driving, running off the road.  Dr. Turner, however, observed that she was calm, cooperative, fully alert ,and oriented with normal speech, with no evidence of either neurological or psychiatric deficits.  There were no indications or observations of a loss of consciousness.

[R. 41–42.]    Elsewhere in the decision, the ALJ noted the following additional inconsistencies:

- Although Dr. Worsham diagnosed agoraphobia, the claimant's self-reported activities contradicted that.  [R. 24.]

- Plaintiff's claims were inconsistent with her vocational record, which showed that she reportedly worked in an auto upholstery business she and her husband owned performing medium to heavy exertional work through her alleged onset date.  [R. 27.]

- Plaintiff had not sought mental health treatment, which is inconsistent with the severity of her alleged symptoms.  Additionally, Dr. Worsham, who concluded she had "obvious" work-related limitations in function due to her mental condition, nonetheless also stated that he had never recommended psychiatric care and felt her medications (Paxil and Clonazepam) had helped her conditions.  [R. 36.]

- Although Plaintiff testified she had done no grocery shopping in several years, in her Function Report Adult dated April 29, 2011, Plaintiff said she shopped in stores 30 to 45 minutes for groceries.  [R. 36.]

- Plaintiff testified that although she could manage her personal care, she only took baths two to three times a week and seldom washed her hair.  However in her Function Report-Adult dated April 29, 2011, Plaintiff said she had no problem with personal care and needed no reminders to do so.  [R. 36.]

- Plaintiff testified that her emotional problems affected her ability to concentrate and complete tasks and that about three or four years before she began having problems paying bills; she got confused, kept making mistakes, and couldn't remember if she paid or didn't.  However, in her Function Report-Adult dated April 29, 2011, Plaintiff said she managed money, and paid bills, counted change, handled a savings account, and used a checkbook/money orders.  Her ability to handle money had not changed since her illnesses began.  [R. 36.]

24

- Plaintiff was fighting with the Department of Social Services over custody of her grandchildren, who were then living with her, which appeared to be another factor in her decision to stop working in February 2011.  [R. 37.]

- Although Dr. Worsham noted that Plaintiff "suffers from extreme anxiety and depression" and "has agoraphobia, wanting to stay home due to panic attacks when she gets out in public in crowded places, kind of a residual from severe anxiety episodes and reactive depression," he nonetheless opined that she and her husband "were without a doubt fully competent and adequate" to take care of her two- and five-year-old grandchildren, whom her daughter had allegedly abandoned.  [R. 37.]

Upon review of the ALJ's decision, the Court finds the ALJ expressly considered the factors outlined in SSR 96-7p for evaluating Plaintiff's credibility.  Although Plaintiff takes issue with the ALJ's consideration of inconsistencies in the record without attempting to reconcile them with her testimony, such consideration is within the purview of the ALJ's decision making authority.  *See Huntington v. Apfel*, 101 F.Supp.2d 384, 392 (4th Cir. 2000) (citing 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4)) (stating that an ALJ should consider "inconsistencies in the evidence to determine whether a claimant's subjective claims of pain can reasonably be accepted").  Further, Plaintiff bears the burden of proof at the first four steps of the analysis.  *See Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The ALJ's duty was only to "minimally articulate his reasoning so as to make a bridge between the evidence and its conclusions."  *Jackson v. Astrue*, C/A No. 8:08-2855-JFA-BHH, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) (citations and internal quotation marks omitted).  The ALJ's decision in this case sufficiently provides a bridge between the evidence and his conclusion.  Based on the above, the Court finds the ALJ's credibility decision is supported by substantial evidence.

25

**Medical Opinions**

Plaintiff agues the ALJ failed to properly evaluate the opinions of Plaintiff's treating physicians in accordance with SSR 96-2p. [Doc. 15 at 20.] Specifically, Plaintiff contends her long-term treating physician Dr. Worsham completed a questionnaire that limits her to sitting for ten minutes at a time, standing for fifteen minutes at a time and sitting, standing, and walking a total of less than two hours on any given work day; opined that she would be absent from work more than four days a month due to her impairments; and also completed several Attending Physician Statements for her long-term insurance company in which he opined she was incapable of working. [*Id.* at 20.] Additionally, Plaintiff claims that David Tollison, Ph.D. ("Dr. Tollison") found that Plaintiff "is expected to deteriorate both psychologically and physically when confronted with pressures, stresses, and demand situations"; "suffers chronic fatigue and, therefore, is expected to require frequent and unscheduled rest periods"; "she is expected to have difficulty interacting effectively with others"; and "her ability to maintain concentration and attention over time is expected to be impaired both by her physical and psychological symptoms." [*Id.* at 20–21.] Plaintiff submits that the evidence outlined in her 4-column, 48-row table supports the opinions of Drs. Worsham and Tollison and that they are entitled to great weight. The Commissioner argues the ALJ's evaluation of the medical opinion evidence is supported by substantial evidence. [Doc. 16 at 20–24.]

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the

26

physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an

27

> individual's ability to do past relevant work or any other type of
> work. Because these are administrative findings that may
> determine whether an individual is disabled, they are reserved
> to the Commissioner. Such opinions on these issues must not
> be disregarded. However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e),

416.927(e) (stating an ALJ does not have to "give any special significance to the source of

an opinion on issues reserved to the Commissioner," such as an opinion that the claimant

is disabled, the claimant's impairment or impairments meets or equals a listing, or the

claimant has a certain residual functional capacity).

### The ALJ's Treatment of Medical Opinions

#### Dr. Worsham

With respect to Dr. Worsham, the ALJ noted that Dr. Worsham was Plaintiff's primary

care physician and summarized his treatment notes and findings throughout the decision

dating back to 2009.  [*See, e.g.*, R. 15–20, 24, 30–39, 41–46.]  The ALJ noted that Dr.

Worsham opined Plaintiff was permanently disabled and had been unable to work since

February 7, 2011.  [R. 42.]  The ALJ's evaluation of Dr. Worsham's opinion is as follows:

> While Dr. Worsham's statement that the claimant is unable to
> work and permanently disabled are opinions about an issue
> reserved to the Commissioner, his opinion may not be ignored.
> At the same time, I have considered that he provided no
> reasonable basis for his opinion.  He failed to identify any
> supporting medical data, including any diagnostic tests.  And
> while he lists "ANA positive polyarthritis," his own record shows
> negative ANA testing.  He identifies no limitations or restrictions
> beyond the conclusory "unable to work."  Moreover his opinion
> is inconsistent with the remainder of the evidence, including his
> own progress notes, and the diagnostic tests and diagnoses of
> Dr. Schwartz, Dr. Hun, and Dr. Marshall.  For the foregoing

28

reasons, I do not find his opinion persuasive and assign it no special significance.

On September 21, 2011 Dr. Worsham also responded to a *Physical Questionnaire* propounded by the claimant's attorney (Ex.12F).  In evaluating the weight to give Dr. Worsham's opinion, I have considered SSR-96-2p and the factors in 404.1527, including the examining relationship, length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, consistency, and specialization. I have also considered the other factors described in 404.1527(d)(6), which tend to support or contradict the opinion, such as the amount of the medical source's understanding of our disability programs and their evidentiary requirements, and the extent to which he is familiar with the other information in the claimant's case record.  I have also considered that the opinion of a treating physician must be accorded "great weight" and may be disregarded only if there is persuasive contradictory evidence.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987).

However in this case, there is persuasive contradictory evidence.  Dr. Worsham is a family practice physician, not an orthopedist or neurosurgeon.  He stated that the claimant's diagnoses were "multilevel disc bulges lumbar with lateral recess stenosis."  However, the record shows her lumbar MRIs and x-rays consistently stated only "minimal" and "very mild" degenerative disk disease.  While there was evidence of "multilevel disc bulges," these were "mild generalized disk bulge at L4-5 and L5-21, with no evidence of a large disc extrusion or migration (Ex.3F/15/2F).  There were no focal disc herniations, and the diagnosis was "minimal disc bulge at L5-S1" (Ex.1F/10).  As Dr. Melton, her treating neurosurgeon stated, "Minimal lumbar degenerative disk disease," and his diagnosis was "Lumbago" (Ex. 18F).

Dr. Worsham notably failed to answer the query, "Does your patient fulfill the diagnostic criteria for systemic lupus erythematosus (SLE)?"  Instead, he stated "ANA positive polyarthritis," even though his own testing showed a *negative* ANA (Ex.2F/19), and both x-rays and lumbar MRIs consistently showed no evidence of degenerative joint disease.  While that diagnosis was nowhere in her prior records, it notably was *the claimant* who told him during her "new patient" consultation that she was diagnosed with "ANA positive polyarthritis," and he

appears to have subsequently adopted that diagnosis without any supporting evidence. He subsequently admitted, "she probably has had difficulties in the past, but we haven't seen records to try to discern exactly what it is" (Ex.23F/3). In the *Questionnaire* he identified as "clinical findings" and "positive objective signs" reduced range of motion, abnormal gait, muscle spasm, tenderness, muscle weakness, and chronic pain. However his progress notes are remarkable for the absence of *any* observation of reduced range of motion, abnormal gait, tenderness, or muscle weakness. While he had been treating her for back pain, when seen in the emergency room after an auto accident on November 23, 2010, examination showed her neck was supple, non-tender, with painless range of motion. Her back, including her thoracic spine, was nontender, and motor was intact in all extremities (Ex.2F). While he periodically noted on "HEENT: posterior cervical area pain and spasming," on November 23, 2010, the claimant herself specifically denied neck pain or paresthesias (Ex2F).

Dr. Worsham opined that in an 8-hour workday the claimant could stand for no more than 15 minutes continuously, could sit for no more than 10 minutes continuously, could not sit or stand in combination for even two hours total, and with prolonged sitting would need to elevate her legs. However, he offers no medical support on which to base that opinion. To the contrary, Dr. Schwartz's records show her peripheral arterial disease was "not severe," (Ex.21F), and Dr. Worsham's own records show that the diagnostic studies he ordered (ABI, Bilateral Lower Extremity Arterial Scan) (Exs.23F/4,5) showed no evidence of arterial insufficiency. *None* of her physicians, including Dr. Worsham, ever observed abnormal gait or station. Moreover through her alleged onset date the claimant had continued to do medium to heavy work ten hours a day, which included *standing nine hours* (Ex.3E/2). In addition, the claimant herself reported on April 29, 2011 that her daily activities included standing and sitting far in excess of Dr. Worsham's limitations. She stated for example that she shopped in stores 30 to 45 minutes for groceries, spent several hours cleaning and doing light housework, spent 15 to 30 minutes daily preparing meals. She sat regularly, driving her son to and from school daily, driving herself to stores, and said her hobbies included watching TV, presumably sitting (Ex. 4E).

While Dr. Worsham opined that the claimant could rarely lift 10 pounds, could only occasionally lift less than 10 pounds, could

rarely twist, and could never stoop, couch/squat, or climb ladders or stairs, through her alleged onset date the claimant had continued to do medium to heavy work ten hours a day, which included lifting 50 pounds frequently and up to 70 pounds (Ex.3EI2).  Moreover on April 13, 2011 Dr. Worsham opined that the claimant was "without a doubt fully competent and adequate" to take care of her 2-year-old and 5-year-old grandchildren, allegedly abandoned by her daughter, while her husband continued to run their business (Ex.11F/7).  Yet that would presumably entail standing, sitting, lifting, and the ability to concentrate long enough to complete simple child-care tasks. While Dr. Worsham opined that her pain was severe enough to frequently interfere with the attention and concentration needed to perform even simple work tasks, that is inconsistent with his own statement to Disability Determination Services on April 21, 2011 that her attention and concentration were adequate, and his conclusion that she was capable of managing her own funds (Ex.3F/17).  Moreover the claimant herself reported on April 29, 2011 that she had no problem with personal care, got her child ready for school and drove him there, and then spent several hours cleaning.  She then picked her son up from school, cooked supper, cleaned the kitchen, and gave her son a bath and got him ready for bed.  She fed the pets.  She spent 15 to 30 minutes daily preparing meals.  Twice a week she did laundry.  She managed money, and could pay bills, count change, handle a savings account, and use a checkbook/money orders.  Her ability to handle money had not changed since her illnesses began.  She shopped in stores 30 to 45 minutes for groceries.  She could drive alone and needed no reminders to go places, to take care of her personal needs and grooming, or to take medication.  She has no problem paying attention, could follow both spoken and written instructions very well.  Watching TV is one of her hobbies (Ex. 4E).  Moreover she said she independently completed both her *Disability Report-Adult* dated March 18, 2011(Ex.2E) and her *Function Report-Adult* dated April 29, 2011 (Ex.4E).  Dr. Worsham's opinion of limited concentration is also inconsistent with the observations of Dr. Moody, that her thought processes were logical and goal directed, she was able to answer all questions, her memory was intact and her concentration, pace and persistence were fair to adequate.  She could carry out simple instructions and manage her own funds (Ex.6F).

For the foregoing reasons, I do not assign controlling weight to Dr. Worsham's opinion, and assign it only little weight.

31

[R. 43–45 (emphases in original).]

*Dr. Tollison*

The ALJ considered Dr. Tollison's opinion as an examining but not treating psychologist who frequently performs evaluations for the state agency, noting that his opinion was based on Plaintiff's statements, clinical observations, Dr. Worsham's progress notes, Dr. Moody's diagnosis, and the results of standardized testing. [R. 45.] The ALJ explained his evaluation of Dr. Tollison's opinion as follows:

> . . . I have also considered that while he relies on Dr. Worsham's diagnoses and progress notes, these represent the claimant's subjective complaints; his records are notable for the absence of *any* observations of impaired mood, affect, concentration, or loss of emotional control. Moreover, as discussed above, many of Dr. Worsham's statements regarding her pain and limitations are again her self-reports, not his observations, and his diagnoses of severe degenerative disk disease, peripheral arterial disease, and ANA polyarthritis are inconsistent with the records of treating specialists, including an orthopedist, a neurosurgeon, and two pain specialists, records which Dr. Tollison does not appear to have been given for review. While he cites Dr. Worsham's June 29, 2011 statement that the claimant "suffers from extreme anxiety, panic attacks, depression, agoraphobia, chronic pain and pain syndrome," he does not seem to question his failure to refer her to a psychiatrist or to any mental health specialist, nor her failure to seek treatment at any of the free mental health clinics in the area. Nor does he seem aware of Dr. Worsham's conflicting statement on April 13, 2011, related to a Department of Social Services inquiry, that the claimant was "without a doubt fully competent and adequate" to take care of her 2-year-old and 5-year-old grandchildren, allegedly abandoned by her daughter, while her husband continued to run their business (Ex.11F/7).
>
> What I find particularly problematic is that many of the claimant's statements to Dr. Tollison are inconsistent both with her prior reports documented in the record and with her subsequent testimony. For example, she told him she suffers from panic attacks "on a near daily basis," but Dr. Worsham's records indicate these only occurred when in crowds, not at

home.  At the hearing however she testified that she has "two panic attacks a day."

Dr. Tollison observed that the claimant was casually but appropriately attired, and it does not appear she made any complaint of difficulty managing personal care.  Dr. Worsham similarly never made any comment on her appearance or hygiene, or related deficits.   However she notably told Dr. Moody that while she can bathe and dress herself without assistance, she often avoids bathing due to the pain, and he observed that she was dressed casually with a messy ponytail (Ex.6F).  However she told the Social Security Administration approximately six weeks earlier that she had *no problem* with personal care (Ex.4E/2).   But at the hearing, the claimant testified that she can manage her personal care, "but it's hard, a long process, so she only takes baths two to three times a week and seldom washers her hair'.

She told Dr. Tollison she had agoraphobia, was uncomfortable leaving home "and if I have to go somewhere I get real nervous, I got real nervous coming here today."  She goes to the grocery store "when I have to, it makes me nervous so I try to save it all up and get it done at one time."  She sometimes does light meal preparation, but "very rarely goes to a restaurant to eat, once again because of anxiety around people."  She did not frequent entertainment venues.  "She used to go to church but reports that she is unable to sit for long periods of time and 'being around people makes me nervous.'"  However she later told him that "she attends church sporadically . . . about twice a month." I note Dr. Worsham also diagnoses her with agoraphobia, but cites no supporting evidence.  However the claimant told the Social Security Administration that she "regularly" went to church once a week, and in describing her daily activities said she gets her child ready for school, takes him to and from school, and shops in stores 30 to 45 minutes for groceries (Ex 4E/4).  Similarly, she told Dr. Moody she does enjoy going to church when she is able, and can drive a car and grocery shop alone.  She said she left the house twice a week to go to the store or to church (Ex.6F).  But during the hearing, three months after Dr. Tollison's evaluation, the claimant testified that she stopped going to church "when things got bad," and, contrary to her reports to the Social Security Administration and Dr. Moody, has not gone grocery shopping "in several years."  Contrary to her report to Dr. Tollison, she also testified that she seldom cooks and instead goes out to eat.  She drives short distances

(2 to 3 miles) to shop at Wal-mart.  While she told Dr. Tollison she stays home and does not frequent entertainment venues, the claimant testified that in June 2012 she took her son to Myrtle Beach.

I note too that the claimant told Dr. Tollison she had crying episodes several times weekly at home and her husband calls her "a crybaby," and he notes she wept softly several times during his evaluation.  However she failed to mention this symptom in her list of depressive and anxious symptoms to Dr. Moody, and was composed during his evaluation.  This behavior was not witnessed nor reported elsewhere in the record.

While Dr. Tollison concluded that "her ability to maintain concentration and attention over time is expected to be impaired both by her physical and psychological symptoms," he observed that she was fully oriented, and while a bit scattered, her thought processes were basically intact, as was her associations, and her memory for both recent and remote events.  Moreover she was able to give a detailed history, and to complete a *Pain Patient Profile* and the MMPI-2 (abbreviated version).

While Dr. Tollison relies on the results of the MMPI-2, (abbreviated version), I note this is based on her subjective responses, which as discussed have been both inconsistent and contradictory.  Moreover, "The MMPI is not like an IQ test where the score directly documents the person's level of intellectual functioning.  Rather, the MMPI is merely a diagnostic tool, and its results are not a definitive diagnosis of a psychological profile of an individual.  Yet his conclusions appear heavily weighted in her "likely" behaviors based on this profile, which are notably inconsistent with both her prior reports and subsequent testimony.

For the foregoing reasons, I assign little weight to Dr. Tollison's opinion.

[R.  45–47 (emphases in original) (footnote omitted).]

34

### Discussion

As an initial matter, under SSR 96-5p, Dr. Worsham's opinion that Plaintiff is disabled is not entitled to controlling weight. Moreover, upon review, the Court finds the ALJ clearly applied the relevant factors in evaluating Dr. Worsham's opinions, as required, and found it was not entitled to controlling weight. The ALJ specifically found Dr. Worsham's opinions to be inconsistent with the evidence of record and his own progress notes and specifically addressed certain inconsistencies he found to be fatal flaws. [R. 43–44.] The ALJ pointed out Dr. Worsham's reliance on a diagnosis of ANA positive polyarthritis when his own records showed Plaintiff tested negative for the same. [R. 43.] The ALJ further noted that while Dr. Worsham identified in his Questionaire "clinical findings" and "positive objective signs" of reduced range of motion, abnormal gait, muscle spasm, tenderness, muscle weakness, and chronic pain, his progress notes are remarkable for the absence of any observation of reduced range of motion, abnormal gait, tenderness, or muscle weakness. [Id.] Additionally, the ALJ pointed out that although Dr. Worsham opined Plaintiff would need to elevate her legs after prolonged sitting, his diagnostic studies (ABI, Bilateral Lower Extremity Arterial Scan) showed no evidence of arterial insufficiency and none of her physicians, including Dr. Worsham, ever observed abnormal gait or station. [R. 44.]

In evaluating Dr. Tollison's opinion, the ALJ explained that Dr. Tollison relied on Dr. Worsham's statements, which were based on Plaintiff's self-reports and not on his own observations, and Dr. Tollison did not appear to have records from treating specialists, including an orthopedist, a neurosurgeon, and two pain specialists, whose findings contradicted Dr. Worsham's. [R. 45.] The ALJ also found problematic the fact that many of Plaintiff's statements to Dr. Tollison were inconsistent both with her prior reports

documented in the record and with her subsequent testimony. [*See, e.g.,* R. 45–46.] The ALJ also pointed out that while Dr. Tollison concluded that "her ability to maintain concentration and attention over time is expected to be impaired both by her physical and psychological symptoms," he observed that she was fully oriented, and while a bit scattered, her thought processes were basically intact, as was her associations, and her memory for both recent and remote events. [R. 46.]

Upon review, the Court finds the ALJ adequately explained his consideration of Dr. Worsham's opinion in light of the record evidence and explained his weighing of the same. Further, the ALJ properly weighed and considered all the evidence of record and the opinion of Dr. Tollison and explained the weight assigned to his opinion. Plaintiff points to no error in the ALJ's analysis of these opinions, other than that it is not the conclusion she draws from the evidence, and fails to direct the Court to any evidence of record ignored or not considered by the ALJ. Accordingly, the Court finds the weight assigned to Dr. Worsham and Dr. Tollison's opinions is supported by substantial evidence.

## **CONCLUSION**

Wherefore, based upon the foregoing, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 28, 2015
Greenville, South Carolina